| | | |
|---|---|---|
| NANCY HAMILTON | * | IN THE |
| 1900 Ships Quarters Court | | |
| Westminster, Maryland 21157 | * | UNITED STATES |
| | | |
|     Plaintiff | * | DISTRICT COURT |
| v. | | |
| | * | FOR THE DISTRICT |
| DETECTIVE DANIEL HERSL 62926-037 | | |
| MCFP Springfield | * | OF MARYLAND |
| 1900 W. Sunshine Street | | |
| Springfield, Missouri 65807 | * | |
| Individually and as a police officer for | | |
| BALTIMORE CITY POLICE DEPT. | * | Case No.: |
| | | |
| AND | * | |
| | | |
| DETECTIVE MOMODU GONDO 62925-037 | * | |
| FCI Butner Low | | |
| Old North Carolina Highway 75 | * | |
| Butner, North Carolina 27509 | | |
| Individually and as a police officer for | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | * | |
| | | |
| SERGEANT WAYNE JENKINS 62928-037 | | |
| FCI Edgefield | * | |
| 501 Gary Hill Road | | |
| Edgefield, South Carolina 29824 | * | |
| Individually and as a police officer for | | |
| BALTIMORE CITY POLICE DEPT. | * | |
| | | |
| AND | * | |
| | | |
| DETECTIVE JEMELL RAYAM | * | |
| Kent County Detention Center | | |
| 104 Vickers Drive | * | |
| Chestertown, MD 21620 | | |
| Individually and as a police officer for | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| | | |
| AND | * | |

BALTIMORE CITY POLICE DEPT.                    *
S/O: Michael Harrison, Police Comm.
601 E. Fayette Street                          *
Baltimore, Maryland 21202
                                               *
        Defendants.
*      *      *      *      *      *      *      *      *      *      *      *      *

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Plaintiff Nancy Hamilton (hereinafter "Ms. Hamilton," "Plaintiff,"

and "Plaintiff Hamilton"), by and through her attorneys James L. Rhodes, Esquire and

Tamiya Baskerville, Esquire, and complaining of the acts of the Defendants alleges and

states as follows:

## INTRODUCTION

In this action, Plaintiff Hamilton seeks compensatory and punitive damages as well

as other relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. §1988, the Fourth,

and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland

Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the

Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Hamilton of

her civil rights and constitute egregious, excessive and objectively unreasonable violation of

numerous rights under the Fourth and Fourteenth Amendments to the United States

Constitution, Articles 24 and 26 of the Maryland Declaration of Rights and Maryland law.

Numerous Defendants participated in Plaintiff Hamilton being illegally stopped, unlawfully

arrested, and falsely imprisoned for an extended period of time. The remaining Defendant

was aware of the custom of violating citizens' civil rights and condoned, or otherwise failed

to adequately train and supervise, such actions. In this instance of carrying out the custom,

Plaintiff Hamilton suffered humiliation, mental anguish, loss of self-esteem, and permanent

injury. Plaintiff Hamilton continues to be injured and seeks treatment as a result of Defendant's actions.

## **PARTIES**

1.      Plaintiff, NancyHamilton, is an adult African American citizen of the United States residing at 1900 Ships Quarters Court, Westminster, Maryland.

2.      Defendant Detective Daniel Hersl (hereinafter "Defendant Hersl," "Officer Hersl," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Hersl was on duty and participated in the stop, apprehension, and false imprisonment of Plaintiff Hamilton. Defendant Hersl is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland Law.

3.      Defendant Detective Momodu Gondo (hereinafter "Defendant Gondo," "Officer Gondo," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Gondowas on duty and participated in the stop, apprehension, and false imprisonment of Plaintiff Hamilton. Defendant Gondo is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland Law.

4.      Defendant Sergeant Wayne Jenkins (hereinafter "Defendant Jenkins," "Officer Jenkins," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Jenkinswas on duty and participated in the stop, apprehension, and false imprisonment of Plaintiff Hamilton. Defendant Jenkins is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland Law.

5.      Defendant Detective Jemell Rayam (hereinafter "Defendant Rayam," "Officer Rayam," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Rayam was on duty and participated in the stop, apprehension, and false imprisonment of Plaintiff Hamilton. Defendant Rayam is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland Law.

6.      Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information and belief, the BPD reposed decision-making authority regarding police officer training and

supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

7.      Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), s*ee also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

8.      Regarding Plaintiff's state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of her civil rights under the United States Constitution.

9.      Defendant BPD encouraged, tolerated, ratified, and was deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

> a.  The use of unreasonable force, excessive force and unlawful arrest by police officers;
>
> b.  The improper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force, unlawful arrest, death while in custody, and violations of citizens' Constitutional rights, particularly in connection with unlawful search and seizure, and racially motivated acts by its police officers;

c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

e. Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

f. The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

10.     Prior to July 8, 2016, Defendant BPD had actual or constructive knowledge that Defendants Hersl, Gondo, Jenkins, Rayam, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to the use of excessive force by its officers, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendant Hersl, Gondo, Jenkins, and Rayam.

11.     Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconduct of these police officers was a proximate cause of Plaintiff's injuries.

12.     At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

13.     The above and all other allegations herein are incorporated by reference as if fully set forth.

14.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S. § 1983, § 1985, and § 1988, as well as claims for relief under Articles 24 and 26 of the Maryland Declaration of Rights, and Maryland State Law.

15.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

## FACTUAL ALLEGATIONS

17.     The above and all other allegations herein are incorporated by reference as if fully set forth.

18.     At all times relevant, Defendants Hersl, Gondo, Jenkins, and Rayam were members of the Defendant BPD's Gun Trace Task Force.

19.     At all times during the course of these events, Defendant BPD had advance notice that members of Gun Trace Task Force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, the Gun Trace Task Force's planting of evidence, stealing of money from citizens, and using excessive force.

20.     Defendant BPD has implemented a policy or custom of condonation or deliberate indifference to the use of excessive force, illegal search and seizures, and misuse of police powers by Defendant BPD officers.

21.     Defendant BPD has failed to adequately train and supervise Defendant BPD's officers in proper arrest, search and seizure, use of police powers, and use of force.

22.     Each of these factual allegations are supported by the incidents detailed below and the complaint set forth herein.

### June 8, 2009 Robbery

23.     On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Defendant Rayam and Officer Jason Giordano of Defendant BPD's Gun Trace Task Force were on patrol in plain clothes as part of the Northern District Drug Unit.

24.     The two officers saw another officer they believed to be Officer Michael Sylvester engaged in a traffic stop in plain clothes.  Defendant Rayam and Officer Giordano verified Officer Sylvester's identity and assisted in the stop.

25.     The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

26.     In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

27.     On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

28.     On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

29.     On that same day Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00.  The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

30.     On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of the Office of the State's Attorney for Baltimore City's Police Integrity Unit. Included were the polygraph results.

31.     Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Assistant State's Attorney Doug Ludwig sent a letter to Defendant BPD's Internal Affairs Division stating Office of the State's Attorney for Baltimore City (hereinafter "State's Attorney's Office") would not be pursuing charges against the officers involved in the theft.

32.     On July 14, 2010, Defendant Rayam and Officer Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown.

**Gary Clayton Case**

33.     On May 4, 2015, State's Attorney's Officefiled an indictment in case number 115124016 against Gary Clayton.  The case was brought by the Gun Trace Task Force.

34.     On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force.

35.     The attached affidavit in support of the Motion for Franks Hearing alleged that Defendant Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Defendant Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter.  In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

36.     The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The State's Attorney's Officewas represented by Assistant State's Attorney Kent Grasso.  Judge Williams found Defendant Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Defendant Rayam.

37.     The State's Attorney's Office entered Nolle Prosequi to the indictment on the same day.

38.     On January 12, 2016, Assistant State's Attorney Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of the State's Attorney's Office, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing.

39.     On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant BPD's Internal Affairs Division outlining the concerns the Office had with Gun Trace Task Force member Defendant Rayam. The memo states that the State's Attorney's Office would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Defendant Rayam in cases "where Jemel Rayam is an essential witness."

40.     The State's Attorney's Office made no mention of Defendant Jenkins threatening a woman with his handgun for asking him for his credentials.

## Kendall English Case

41.     On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts.   He was indicted on August 20, 2015, under case number 115230019.

42.     On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force in their Application for a Search and Seizure warrant in the case.

43.     On October 18, 2016, the State's Attorney's Office filed an objection to defense's motion to disclose the CI that Defendant Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant.

44.     On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion.

45.     On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that Defendant BPD's Internal Affairs Division file of Gun Trace Task Force Member Defendant Rayam be disclosed.

46.     At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Defendant Rayam that had bearing on his credibility. Due to the non-disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

47.     Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Defendant Rayam's testimony in the Franks Hearing from Gary Clayton's case.

48.     The State's Attorney's Office objected to the disclosure.

49.     The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case." Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant BPD's Internal Affairs Division.

50.     Nevertheless, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Defendant Rayam, in the affidavit in support of the search warrant used in the case.

51.     The State's Attorney's Office objected to the disclosure.

52.     One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

### United States Department of Justice Investigation into Baltimore City Police Department

53.     On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD.

54.     The Department of Justice concluded that "there is reasonable cause to
believe that BPD engages in a pattern or practice of conduct that violates the Constitution or
federal law. BPD engages in a pattern or practice of:

    a.  Making unconstitutional stops, searches, and arrest;

    b.  Using enforcement strategies that produce severe and unjustified disparities in
        the rates of stops, searches and arrests of African Americans'

    c.  Using excessive force; and

    d.  Retaliating against people engaging in constitutionally-protected expression."

55.     In regard to discrimination against African Americans, the report specifically
found that "racial disparities in BPD's arrests are most pronounced for highly discretionary
offenses: African Americans accounted for 91 percent of the 1,800 people charged solely
with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false
statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly
conduct.""

56.     In regard to the use of constitutionally excessive force, the report specifically
found that "BPD uses overly aggressive tactics that unnecessarily escalate encounters,
increase tensions, and lead to unnecessary force, and fails to de-escalate encounters when it
would be reasonable to do so. Officers frequently resort to physical force when a subject
does not immediately respond to verbal commands, even where the subject poses no
imminent threat to the officer or others. These tactics result from BPD's training and
guidance."

57.     Additionally, in regard to force used on fleeing suspects, the report states
"BPD officers frequently engage in foot pursuits of individuals, even where the fleeing

individuals are not suspected of violent crimes. BPD's foot pursuit tactics endanger officers and the community, and frequently lead to officers using excessive force on fleeing suspects who pose minimal threat. BPD's aggressive approach to foot pursuits extends to flight in vehicles."

58.     Following these findings, the report stated the Department's concerns about BPD's use of excessive force is compounded by BPD's ineffective oversight of the use of force, referencing the following statistics: "Of the 2,818 force incidents that BPD recorded in the nearly six-year period we reviewed, BPD investigated only ten incidents based on concerns identified through its internal review. Of these ten cases, BPD found only one use of force to be excessive."

59.     Finally, the report made a number of findings regarding the deficient policies, training, supervision, and accountability throughout the BPD, stating, "BPD's systemic constitutional and statutory violations are rooted in structural failures. BPD fails to use adequate policies, training, supervision, data collection, analysis, and accountability systems, has not engaged adequately with the community it policies, and does not provide its officers with the tools needed to police effectively."

**Federal Criminal Proceedings Against the Gun Trace Task Force**

60.     In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's Gun Trace Task Force officers, including Defendant Hersl, Defendant Gondo, Defendant Jenkins, and Defendant Rayam.

61.     Subsequently, a number of the officers pleaded guilty and others were found guilty at trial in front of this Court.

62.     On or about July 21, 2017, Defendant Rayam pleaded guilty to racketeering conspiracy. Defendants Rayam was subsequently sentenced to twelve years in prison.

63.     On or about October 11, 2017, Defendant Gondo pleaded guilty to racketeering conspiracy and conspiracy to distribute and possess with the intent to distribute heroin. Defendant Gondowas subsequently sentenced to 10 years in prison.

64.     On or about January 5, 2018, Defendant Jenkins pleaded guilty to racketeering conspiracy, racketeering, robbery, destruction, alteration, of falsification of records in a federal investigation, and deprivation of rights under color of law. Defendant Jenkins was subsequently sentenced to 25 years in prison.

65.     On or about February 12, 2018, Defendant Hersl was found guilty of two counts of racketeering conspiracy, racketeering aiding and abetting, racketeering and robbery. Defendant Hersl was subsequently sentenced to 18 years in prison.

## PLAINTIFF'S CASE

66.     On July 8, 2016, Plaintiff was traveling to conduct errands with her husband.

67.     Plaintiff and her husband were stopped by Defendants Rayam, Gondo, and Hersl.

68.     Unbeknownst to Plaintiff, Defendant Jenkins had applied for a search warrant of the Plaintiff's home in Carroll County using a falsified affidavit.

69.     Plaintiff and her husband were initially stopped on or near Reisterstown Road in Baltimore County where they were taken out of their vehicle (without consent and in fear of being beaten or worse), handcuffed, and placed in separate vehicles.

70.     Plaintiff was under the belief that persons impersonating police officers had stopped and were abducting them for a reason unknown to her.

71.     Plaintiff and her husband were driven in separate vehicles into Baltimore City where they eventually stopped at what she came to learn to be the Baltimore police safety training facility on Northern Parkway.

72.     At the training facility, the Plaintiff would be kept outside and handcuffed for almost an hour while her husband was taken somewhere else (Plaintiff believed her husband was taken inside at that time).

73.     Plaintiff complained insistently of her need to use the restroom and she was finally taken inside.

74.     While inside, Plaintiff noticed that the building was very dark and appeared to be closed.

75.     Plaintiff continued to be nervous and fearful for her life as she was taken in the training facility.

76.     After Plaintiff was taken out of the training facility she was handcuffed and placed back in a vehicle with some of the Defendant officers.

77.     Once she was placed back in the vehicle, Defendants officers eventually drove Plaintiff and her husband to Plaintiff's Carroll County home.

78.     As Plaintiff, her husband, and Defendant officers neared the Plaintiff's home, Plaintiff was asked by Defendant officers whether there was anyone at Plaintiff's home. When Plaintiff advised that her children were home, Defendants officers made Plaintiff call her children and tell them to leave the home.

79.     The children were extremely worried and concerned, especially considering the nervous and excited nature of the Plaintiff's call wherein she refused to give the children an explanation while telling them leave the home.

80.     When the Plaintiff and her husband arrived at home with Defendant officers, Defendants officers searched Plaintiff's home.

81.     Plaintiff was taken downstairs and was continuously asked for the whereabouts of money.  Plaintiff continuously cried and advised that she was unaware of the whereabouts of any money.

82.     Plaintiff was eventually taken back upstairs and sat near her husband while she witnessed Defendant officers continuing a search.  Plaintiff was then advised by her husband that he had a large sum of cash in the house and that he had given Defendant officers the location of the cash.  Plaintiff was unaware of this money.

83.     Defendant officers, upon information, and belief, stole a large portion of the husband's cash before contacting a Carroll County law enforcement agency to assist in the search.

84.     Plaintiff was even more convinced at this point that she had been kidnapped by criminals masquerading to be law enforcement from Baltimore City.

85.     The next persons to enter Plaintiff's home were what Plaintiff later came to learn to be K-9 officers from Carroll County.

86.     The K-9 officer arrived with a black mask and a K-9 and this further terrified the Plaintiff.

87.     After the Carroll County law enforcement left the residence, Defendant officers remained and attempted to convince Plaintiff's husband to assist them in robbing drug dealers so that the husband could be assisted by Defendant officers in obtaining drugs to sell.

88.     Defendant officers released the remaining portion of Plaintiff's husband's money (the portion that they did not steal) over to Carroll County law enforcement wherein Plaintiff's husband had to go to Court in order to fight a legal battle for the return on the money.

89.     Plaintiff had to appear in court as a witness.

90.     While at Court, a person believed to be Defendant Jenkins was present and began taking pictures of Plaintiff.

91.     When Plaintiff alerted her husband to what was occurring, Plaintiff's husband's attorney attempted to ascertain why Defendant Jenkins was taking pictures of Plaintiff.

92.     Plaintiff's husband told Defendant Jenkins that he was a crooked cop and that he (Jenkins) knew what they had done to Plaintiff and her husband.

93.     Defendant Jenkins simply responded that "we aren't finished with you", further placing Plaintiff in fear for her safety and life.

94.     Plaintiff continues to fear for her life and safety daily as a result of this incident.

95.     Plaintiff filed the appropriate notice of intent to file a claim under the local government tort claims act.

96.     On March 1, 2017, all of the members of Defendant BPD involved with this case were indicted in the United States District Court of Maryland for being a rogue criminal enterprise that routinely stole, planted evidence and committed violent felonies in furtherance of their criminal enterprise.

**COUNT I**
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988– Officer Hersl, in his official and personal capacity)**

97.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

98.     At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

99.     Plaintiff, without being violent, was detained by Defendants for several hours and remained handcuffed for nearly an hour while in custody of Defendants. This conduct constitutes an illegal arrest. Defendant Hersl did not have probable cause to believe that the Plaintiff was involved in any criminal activity.

100.     The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

101.     There was no legal basis for stopping and detaining Plaintiff.

102.     As a result of the Defendant's conduct and actions, Ms. Hamilton suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT II**
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988– Officer Hersl, in his official and personal capacity)**

103.     The foregoing and all other paragraphs herein are incorporated by reference

as if fully set forth.

104.     At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

105.     By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

106.     The Plaintiff was detained while handcuffed for nearly an hour while in custody of the Defendant Officers and continued to be detained while Defendant officers transported Plaintiff from Baltimore County to Baltimore City, then subsequently to Carroll County, and remained detained while Defendant officers searched Plaintiff's home for money for they alleged Plaintiff's husband to possess.

107.      Such action caused Ms. Hamilton to be unlawfully deprived of her liberty.

108.     Defendant Hersl participated in detaining Plaintiff Hamilton for several hours.

109.     As a result of the actions of Defendant Hersl, in holding Ms. Hamiltonagainst her will for an extended period of time without consent or legal justification, Ms. Hamilton has suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

110.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, falsely imprisoning an innocent woman.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT III
### (Assault – Officer Hersl, in his official and personal capacity)

111.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

112.     At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

113.     Upon information and belief, Defendant Hersl participated in the assault of Plaintiff in the course of his false arrest.

114.     Defendant Hersl acted with the intent and capability to do bodily harm to Ms. Hamilton. His conduct was perpetrated by actual malice without legitimate reason or legal justification.

115.     Defendant Hersl actions caused Ms. Hamilton to be put in imminent fear that Defendant officers would batter her and cause an offensive touching of her.

116.     Plaintiff was frightened by the continued unlawful actions of Defendant Hersl including the assault upon her.

117.     Plaintiff did not consent to the assault nor did the Defendant officers have any legal authority to commit the assault.

118.     As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT IV
### (Battery – Officer Hersl, in his official and personal capacity)

119.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

120.    At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

121.    Defendant Herslcaused offensive contact to Plaintiff.

122.    Plaintiff never consented to the contact and Defendant Hersl had no legal justification for the touching.

123.    As a direct and proximate result of Defendant Hersl's battery of Plaintiff, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT V
### (Intentional Infliction of Emotional Distress – Officer Hersl, in his official and personal capacity)

124.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

125.     At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

126.     Defendant Hersl acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

127.     Defendant's conduct, which included assaulting Plaintiff and detaining her, embarrassed and humiliated Plaintiff.  The unfounded detention amounted to extreme and outrageous conduct.

128.     Defendant Hersl's acts were intentional, reckless, and in deliberate disregard of the high degree of probability that emotional distress would result.

129.     The conduct Defendant Hersl engaged in with Plaintiff is made even more extreme and outrageous by the fact Defendant was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

130.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

131.     The Defendant's actions, violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT VI
### (Violation of Maryland Declaration of Rights – Officer Hersl, in his official and personal capacity)

132.     The foregoing and all other paragraphs herein are incorporated by reference as

if fully set forth.

133.    At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

134.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

135.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

136.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

137.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

138.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## <u>COUNT VII</u>
### (Violation of Maryland Declaration of Rights – Officer Hersl, in his official and personal capacity)

139.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

140.    At all times relevant to this Complaint, Defendant Hersl was acting under the color of state law as an Officer employed by Defendant BPD.

141.    Plaintiff submits these claims against the Defendants under Article 26 of the Maryland Declaration of Rights.

142.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 26 throughout this Complaint.

143.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 26.

144.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 26 of the Maryland Declaration of Rights.

145.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT VIII
### (Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988– Officer Gondo, in his official and personal capacity)

146.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

147.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

148.    Plaintiff, without being violent, was detained by Defendants for several hours and remained handcuffed for nearly an hour while in custody of Defendants. This conduct constitutes an illegal arrest. Defendant Gondo did not have probable cause to believe that the Plaintiff was involved in any criminal activity.

149.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

150.    There was no legal basis for stopping and detaining Plaintiff.

151.    As a result of the Defendant's conduct and actions, Ms. Hamilton suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## <u>COUNT IX</u>
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Gondo, in his official and personal capacity)**

152.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

153.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

154.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without

legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

155.    The Plaintiff was detained while handcuffed for nearly an hour while in custody of the Defendant Officers and continued to be detained while Defendant Officers transported Plaintiff from Baltimore County to Baltimore City, then subsequently to Carroll County, and remained detained while Defendant officers searched Plaintiff's home for money for they alleged Plaintiff's husband to possess.

156.     Such action caused Ms. Hamilton to be unlawfully deprived of her liberty.

157.    Defendant Gondo participated in detaining Plaintiff Hamilton for several hours.

158.    As a result of the actions of Defendant Gondo, in holding Ms. Hamilton against her will for an extended period of time without consent or legal justification, Ms. Hamilton has suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

159.    At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, falsely imprisoning an innocent woman.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT X
### (Assault – Officer Gondo, in his official and personal capacity)

160.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

161.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

162.    Upon information and belief, Defendant Gondo participated in the assault of Plaintiff in the course of his false arrest.

163.    Defendant Gondo acted with the intent and capability to do bodily harm to Ms. Hamilton. His conduct was perpetrated by actual malice without legitimate reason or legal justification.

164.    Defendant Gondo actions caused Ms. Hamilton to be put in imminent fear that Defendant officers would batter her and cause an offensive touching of her.

165.    Plaintiff was frightened by the continued unlawful actions of Defendant Gondo including the assault upon her.

166.    Plaintiff did not consent to the assault nor did the Defendant officers have any legal authority to commit the assault.

167.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XI
### (Battery – Officer Gondo, in his official and personal capacity)

168.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

169.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

170.    Defendant Gondo caused offensive contact to Plaintiff.

171.    Plaintiff never consented to the contact and Defendant Gondo had no legal justification for the touching.

172.    As a direct and proximate result of Defendant Gondo's battery of Plaintiff, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XII
### (Intentional Infliction of Emotional Distress – Officer Gondo, in his official and personal capacity)

173.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

174.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

175.    Defendant Gondo acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

176.     Defendant's conduct, which included assaulting Plaintiff and detaining her, embarrassed and humiliated Plaintiff.  The unfounded detention amounted to extreme and outrageous conduct.

177.     Defendant Gondo's acts were intentional, reckless, and in deliberate disregard of the high degree of probability that emotional distress would result.

178.     The conduct Defendant Gondo engaged in with Plaintiff is made even more extreme and outrageous by the fact Defendant was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

179.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

180.     The Defendant's actions, violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## <u>COUNT XIII</u>
### (Violation of Maryland Declaration of Rights – Officer Gondo, in his official and personal capacity)

181.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

182.     At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

183.     Plaintiff submits these claims against the Defendants under Article 24 of the

Maryland Declaration of Rights.

184.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

185.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

186.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

187.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs

## COUNT XIV
**(Violation of Maryland Declaration of Rights – Officer Gondo, in his official and personal capacity)**

188.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

189.    At all times relevant to this Complaint, Defendant Gondo was acting under the color of state law as an Officer employed by Defendant BPD.

190.    Plaintiff submits these claims against the Defendants under Article 26 of the Maryland Declaration of Rights.

191.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 26 throughout this Complaint.

192.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 26.

193.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 26 of the Maryland Declaration of Rights.

194.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XV
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988– Officer Jenkins, in his official and personal capacity)**

195.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

196.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

197.    Plaintiff, without being violent, was detained by Defendants for several hours and remained handcuffed for nearly an hour while in custody of Defendants. This conduct constitutes an illegal arrest. Defendant Jenkins did not have probable cause to believe that the Plaintiff was involved in any criminal activity.

198.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

199.    There was no legal basis for stopping and detaining Plaintiff.

200.    As a result of the Defendant's conduct and actions, Ms. Hamilton suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVI
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 1988– Officer Jenkins, in his official and personal capacity)**

201.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

202.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

203.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

204.    The Plaintiff was detained while handcuffed for nearly an hour while in custody of the Defendant Officers and continued to be detained while Defendant Officers transported Plaintiff from Baltimore County to Baltimore City, then subsequently to Carroll

County, and remained detained while Defendant officers searched Plaintiff's home for money for they alleged Plaintiff's husband to possess.

205.     Such action caused Ms. Hamilton to be unlawfully deprived of her liberty.

206.     Defendant Jenkins participated in detaining Plaintiff Hamilton for several hours.

207.     As a result of the actions of Defendant Jenkins, in holding Ms. Hamilton against her will for an extended period of time without consent or legal justification, Ms. Hamilton has suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

208.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, falsely imprisoning an innocent woman.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVII
### (Assault – Officer Jenkins, in his official and personal capacity)

209.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

210.     At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

211.     Upon information and belief, Defendant Jenkins participated in the assault of Plaintiff in the course of his false arrest.

212.    Defendant Jenkins acted with the intent and capability to do bodily harm to Ms. Hamilton. His conduct was perpetrated by actual malice without legitimate reason or legal justification.

213.    Defendant Jenkins' actions caused Ms. Hamilton to be put in imminent fear that Defendant officers would batter her and cause an offensive touching of her.

214.    Plaintiff was frightened by the continued unlawful actions of Defendant Jenkins including the assault upon her.

215.    Plaintiff did not consent to the assault nor did the Defendant officers have any legal authority to commit the assault.

216.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XVIII
### (Battery – Officer Jenkins, in his official and personal capacity)

217.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

218.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

219.    Defendant Jenkins caused offensive contact to Plaintiff.

220.    Plaintiff never consented to the contact and Defendant Jenkins had no legal justification for the touching.

221.    As a direct and proximate result of Defendant Jenkins' battery of Plaintiff, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

**COUNT XIX**
**(Intentional Infliction of Emotional Distress – Officer Jenkins, in his official and personal capacity)**

222.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

223.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

224.    Defendant Jenkins acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

225.    Defendant's conduct, which included assaulting Plaintiff and detaining her, embarrassed and humiliated Plaintiff.  The unfounded detention amounted to extreme and outrageous conduct.

226.    Defendant Jenkins' acts were intentional, reckless, and in deliberate disregard of the high degree of probability that emotional distress would result.

227.    The conduct Defendant Jenkins engaged in with Plaintiff is made even more

extreme and outrageous by the fact Defendant was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

228.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

229.     The Defendant's actions, violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XX
### (Violation of Maryland Declaration of Rights – Officer Jenkins, in his official and personal capacity)

230.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

231.     At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

232.     Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

233.     Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

234.     Plaintiff further states that the allegations alleged were within the scope of

Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

235.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

236.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XXI
### (Violation of Maryland Declaration of Rights – Officer Jenkins, in his official and personal capacity)

237.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

238.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

239.    Plaintiff submits these claims against the Defendants under Article 26 of the Maryland Declaration of Rights.

240.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 26 throughout this Complaint.

241.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited

immunity afforded the Defendant under Article 26.

242.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 26 of the Maryland Declaration of Rights.

243.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XXII
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988 – Officer Rayam, in his official and personal capacity)**

244.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

245.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

246.    At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

247.    Plaintiff, without being violent, was detained by Defendants for several hours and remained handcuffed for nearly an hour while in custody of Defendants. This conduct constitutes an illegal arrest. Defendant Rayam did not have probable cause to believe that the Plaintiff was involved in any criminal activity.

248.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

249.    There was no legal basis for stopping and detaining Plaintiff.

250.     As a result of the Defendant's conduct and actions, Ms. Hamilton suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIII
### (False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985, 1988– Officer Rayam, in his official and personal capacity)

251.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

252.     At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

253.     By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

254.     The Plaintiff was detained while handcuffed for nearly an hour while in custody of the Defendant Officers and continued to be detained while Defendant Officers transported Plaintiff from Baltimore County to Baltimore City, then subsequently to Carroll County, and remained detained while Defendant officers searched Plaintiff's home for money for they alleged Plaintiff's husband to possess.

255.      Such action caused Ms. Hamilton to be unlawfully deprived of her liberty.

256.     Defendant Rayam participated in detaining Plaintiff Hamilton for several

hours.

257.     As a result of the actions of Defendant Rayam, in holding Ms. Hamilton against her will for an extended period of time without consent or legal justification, Ms. Hamilton has suffered, and will continue to suffer, severe mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem, legal fees, and other related expenses.

258.     At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, falsely imprisoning an innocent woman.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIV
### (Assault – Officer Rayam, in his official and personal capacity)

259.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

260.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

261.     At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

262.     Upon information and belief, Defendant Rayam participated in the assault of Plaintiff in the course of his false arrest.

263.    Defendant Rayam acted with the intent and capability to do bodily harm to Ms. Hamilton. His conduct was perpetrated by actual malice without legitimate reason or legal justification.

264.    Defendant Rayam actions caused Ms. Hamilton to be put in imminent fear that Defendant officers would batter her and cause an offensive touching of her.

265.    Plaintiff was frightened by the continued unlawful actions of Defendant Rayam including the assault upon her.

266.    Plaintiff did not consent to the assault nor did the Defendant officers have any legal authority to commit the assault.

267.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XXV
### (Battery – Officer Rayam, in his official and personal capacity)

268.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

269.    At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

270.    Defendant Rayam caused offensive contact to Plaintiff.

271.    Plaintiff never consented to the contact and Defendant Rayam had no legal justification for the touching.

272.    As a direct and proximate result of Defendant Rayam's battery of Plaintiff, Plaintiff has suffered and will continue to suffer legal fees, emotional distress, embarrassment, humiliation, and loss of self-esteem.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XXVI
### (Intentional Infliction of Emotional Distress – Officer Rayam, in his official and personal capacity)

273.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

274.    At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

275.    Defendant Rayam acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

276.    Defendant's conduct, which included assaulting Plaintiff and detaining her, embarrassed and humiliated Plaintiff.  The unfounded detention amounted to extreme and outrageous conduct.

277.    Defendant Rayam's acts were intentional, reckless, and in deliberate disregard of the high degree of probability that emotional distress would result.

278.    The conduct Defendant Rayam engaged in with Plaintiff is made even more

extreme and outrageous by the fact Defendant was, at the time of his conduct, working in his capacity as an officer of Defendant BPD.

279.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

280.     The Defendant's actions, violated Plaintiff's rights guaranteed by the common law of the State of Maryland Declaration of Rights.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XXVII
### (Violation of Maryland Declaration of Rights – Officer Rayam, in his official and personal capacity)

281.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

282.     At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

283.     Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

284.     Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

285.     Plaintiff further states that the allegations alleged were within the scope of

Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

286.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

287.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with reasonable attorneys fees, interest, and costs.

## COUNT XXVIII
### (Violation of Maryland Declaration of Rights – Officer Rayam, in his official and personal capacity)

288.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

289.    At all times relevant to this Complaint, Defendant Rayam was acting under the color of state law as an Officer employed by Defendant BPD.

290.    Plaintiff submits these claims against the Defendants under Article 26 of the Maryland Declaration of Rights.

291.    Plaintiff incorporates all allegations, including those in the aforementioned claims of assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 26 throughout this Complaint.

292.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited

immunity afforded the Defendant under Article 26.

293.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 26 of the Maryland Declaration of Rights.

294.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XXIX
**(Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendants Hersl, Gondo, Jenkins, and Rayam)**

295.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

296.    At all times pertinent to the complaint, Defendants Hersl, Gondo, Jenkins, and Rayam entered in to a civil conspiracy with each other, other members of the Defendant BPD's Gun Trace Task Force, and Defendant BPDto hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

297.    These actions include, but are not limited to, making material misrepresentations of fact or omissions to tribunals, namely the Circuit Court for Baltimore City, specifically in the matter of Kendall English detailed above, and participating in the violation of citizens' civil rights, specifically using excessive force, affecting illegal arrests, and illegally seizing citizens' money and valuables.

298.    As a result of this civil conspiracy, Plaintiff was subject to unlawful use of force, arrest, detention and actual injuries nearly a year before the first Defendant Officers were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXX
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)

299.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

300.    At all times pertinent to the complaint, Defendant BPD entered in to a civil conspiracy with the named Defendants of the Gun Trace Task Force to facilitate and enable members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

301.    These actions include, but are not limited to, failing to conduct meaningful Internal Affairs investigation despite being confronted with allegations that Defendant Officers were engaging in a pattern of illegal searches, seizures, and arrests, continuing to employ the Defendant Officers after findings of illegal activity were made, and failing to reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

302.    As a result of this civil conspiracy, Plaintiff was subject to unlawful use of force, arrest, detention and actual injuries nearly a year before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXI
### (Aider & Abettor Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)

303.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

304.    At all times, substantial assistance, aid, and encouragement to the Gun Trace Task Force and its members' criminal activities was provided by the BPD.

305.    Defendant BPD had actual knowledge of the wrongful conduct of the Gun Trace Task Force and its members and their role in furthering such conduct through failing to investigate and reprimand any of the officers involved despite actual knowledge of illegal activity.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXII
### (Unconstitutional Custom or Practice of Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)

306.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

307.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern,

practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

308.   As alleged herein, Defendants Hersl, Gondo, Jenkins, Rayam, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

309.   Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper supervision or consequence, including illegal search and seizures, and improper use of police powers.

310.   As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

311.   As alleged herein, the actions by all named Defendants were unreasonable, excessive, absent any lawful justification and/or excuse, and were in keeping with the pattern practice, police and/or custom of the Defendant BPD.

312.   Upon information and belief, Defendant BPD has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their unlawful and improper uses of police powers.

313.    Defendant BPD's failure to take remedial actions against the pervasive and unreasonable misconduct of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXIII
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)**

314.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

315.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

316.    As alleged herein, Defendants Hersl, Gondo, Jenkins, and Rayam, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to conduct unlawful arrests and illegally seize citizens' money and valuables and in so doing have failed to properly train Defendant BPD officers.

317.    At all relevant times Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies

exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

318.    Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper training, including unlawful arrests, illegal search and seizure, and improper use of police powers.

319.    It was readily foreseeable and highly predictable that failing to properly train Defendant BPD's officers in the proper use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant BPD was indifferent to same.

320.    As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper arrest procedures, search and seizure, and use of police powers.

321.    As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force, including the named Defendants, to hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

322.    As a direct and proximate result of Defendant BPD's failure adequately train its officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs

with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXIV
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985, and 1988 – Defendant BPD)

323.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

324.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

325.    At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

326.    Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures, search and seizure, and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

327.    As alleged herein, Defendants Hersl, Gondo, Jenkins, Rayam, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD have engaged in a

pattern, practice, policy, or custom of allowing BPD officers to conduct unlawful arrest and illegally seize citizens' money and valuables and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures, search and seizure, and use of police powers.

328.   It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures, search and seizure, and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

329.   As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

330.   As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

331.   Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

332.   Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

333.   As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to conduct illegal arrests, searches, and seizures, and improperly use police powers.

334.   Defendant BPD's was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

335.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

336.    As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

337.    Defendant BPD's improper handling of incidents of illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

338.    As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

_____/S/_____

James L. Rhodes, Esquire Bar #25795
Tamiya Baskerville, Esquire
6600 Belair Road
Suite 2A
Baltimore, MD 21206
(410) 254-2404